## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MARIO J. PRIMM,                    )
                                   )
        Petitioner,                )
                                   )
    vs.                            )     Case number 4:05cv1295 CAS
                                   )                          TCM
DON ROPER,                         )
                                   )
        Respondent.                )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The 28 U.S.C. § 2254 petition of Mario J. Primm, a Missouri prisoner serving an aggregate term of twenty-five years imprisonment, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for a review and a recommended disposition.  See 28 U.S.C. § 636(b).

## Background

Mario J. Primm ("Petitioner") was convicted following a three-day jury trial in July 2001 of five counts of first degree robbery, one count of attempted first degree robbery, one count of first degree assault, and five counts of armed criminal action.  The witnesses against him included two men who were robbed at gunpoint on February 10, 1999; one man who was robbed at gunpoint on February 18; one man who was robbed at gunpoint on March 8; one woman who was robbed at gunpoint on March 9; and one woman who was robbed at gunpoint on March 10.  (Resp. Ex. A at 226-46, 249-316, 323-43.)

One of the two first victims, Orrin Dieckmeyer, identified a gun shown him at trial as one resembling the gun used by one of the robbers. (<u>Id.</u> at 238.) He had not identified Petitioner in a lineup, explaining that his attention was focused on the gun and the other robber, who was wearing a white jacket. (<u>Id.</u> at 233, 235, 240, 241.) He did identify the other robber; his name was Donnell Brandon. (<u>Id.</u> at 235, 240, 245.) The other of the two first victims, Edward Mehler, also identified Brandon, the gun, and a white jacket. (<u>Id.</u> at 254, 257-58.) He could not identify Petitioner, and could not say that Petitioner was not the second robber. (<u>Id.</u> at 265-67.) The victim of the second robbery, Charles Balsamo, identified the gun used and identified Petitioner at a lineup and in court. (<u>Id.</u> at 281, 282, 421.)

James Duffy was the victim of the third robbery. He testified that he was getting his motorcycle helmet out of the trunk of his mother's car when a man holding a gun that appeared to be cocked approached and pointed the gun at him. (<u>Id.</u> at 287-88.) Duffy raised the helmet up and a shot went off. (<u>Id.</u> at 295.) He was shot in his left thigh. (<u>Id.</u> at 288.) He underwent an arterial graft from his right leg to his left leg and has restricted mobility and a loss of feeling in the left leg. (<u>Id.</u> at 289-90.) The treating surgeon characterized the injury as "very serious." (<u>Id.</u> at 447.) Duffy was not able to identify Petitioner as his assailant, but did identify a blue jacket. (<u>Id.</u> at 297-98.)

The victim of the fourth robbery, Julia Vassolo, identified Petitioner in a lineup and in court as her assailant. (<u>Id.</u> at 304, 310-11, 421-22.) She also identified a purse taken from his apartment as hers and identified a gun and jacket, also taken from his apartment,

as being used by or worn by her assailant.  (Id. at 305-06, 421-22.)  The last victim, Kathleen Maddox, identified Petitioner in a lineup and in court as her assailant.  (Id. at 330, 422.)  She identified a purse, bracelet, rings, and watch found at Petitioner's apartment as belonging to her.  (Id. at 325, 334-35.)

Armed with the lineup identifications of Petitioner, a detective, Anthony Crimi, looked for Petitioner and found someone else matching the victims' description of the other robber, Brandon.  (Id. at 346-47, 369, 379.)  Brandon told the officer about Petitioner and told him that Petitioner had some of the stolen property.  (Id. at 347-48.) A search warrant was obtained for Petitioner's apartment.  (Id. at 348.)  Petitioner was at home when the warrant was executed and, according to two officers' testimony, told the officers where to find a gun (underneath a mattress), two purses, and some jewelry.  (Id. at 349, 382, 384-86, 410, 411-12.)  One of the purses had Maddox's driver's license.  (Id. at 388.)  She identified her purse, two rings, and a watch taken from Petitioner's home. (Id.)  Vassolo identified the other purse as hers.  (Id. at 389.)  Balsamo, Duffy, Maddox, and Vassolo identified a jacket taken from Petitioner's home as one being worn by one of the robbers.  (Id. at 391-92.)  They and Dieckmeyer identified a gun taken from the home as being used by one of the robbers.  (Id. at 392-93.)

Another detective, Frederick Klobe, testified that after being advised of his *Miranda*[1] rights and when being interviewed at the police station, Petitioner talked about the robberies remembered doing all five.  (Id. at 415-18.)  Petitioner further stated that he shot

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

Duffy when Duffy had swung a helmet at him. (Id. at 417.) Petitioner made a tape-recorded statement; this tape was played for the jury. (Id. at 425-26, 427.)

Petitioner was his only witness. He testified that he robbed Balsamo, but did not rob any of the other five victims. (Id. at 499-505.) He had been at the scene of the first and fifth robberies, but had not participated. (Id. at 499-501, 503-04.) He was in the area of the fourth robbery but did not see it. (Id. at 502.) He was not in the area of the third robbery and did not shoot Duffy. (Id. at 505.) He did not lead the police to a gun, purses, or any other items. (Id. at 506-07.) He made the false, inculpatory statement only because had been told by police that they would "put some robberies" on him even if he did not admit to doing them and he would "do a lot of time." (Id. at 513, 516-17.)

The jury returned verdicts of guilty on each of the twelve charges. (Resp. Ex. B at 133-44.) At the sentencing hearing, the trial court remarked as follows.

> The Court: I spoke with a number of jurors because I know the jurors were upset. They thought that they were being pushed and, for lack of a better word, forced to enter guilty pleas because there was a gay victim involved. I did look at a letter the State received, so I'm well aware of all of those things.
>
> . . . .
>
> The Court: Notwithstanding the fact that the jury may have been somewhat at odds with each other with respect to these matters, they did render a verdict and I do intend to follow the verdict of the jury.
>      So while I don't necessarily agree with people taking shots at the defendant because of race, sexuality or any other thing, I do think that you deserve to be in prison.
>
> [Trial counsel]: There was a letter from some juror?

[The Court:] I received a letter from a juror who apparently was a gay juror who thought very strongly he should go to jail because he was messing with gay people. That's how I read it. After I spoke to the jurors, it came to [the prosecutor] and [the prosecutor] was kind enough to send it to me. I disregard that. That has absolutely nothing to do with what I believe. I heard the evidence in this case. Under the law, I can't give you more time than what the jurors have recommended. I can certainly give you less time than what the jurors have recommended, but I do believe that, collectively, the jury's verdict was probably the right verdict in this case.

(Resp. Ex. A at 618, 620-21.) The court then sentenced Petitioner to an aggregate term of twenty-five years imprisonment. (Id. at 623.)

Petitioner appealed on three grounds, two of which he now raises for federal habeas relief. (Resp. Ex. C.) One is that the trial court plainly erred by overruling his motion for acquittal on the first degree assault charge because the State failed to prove beyond a reasonable doubt that he "knowingly" injured Duffy as opposed to "recklessly" injuring him. (Id. at 15.) The second is that the trial court plainly erred by not granting a new trial sua sponte after learning that the jurors felt compelled to enter guilty verdicts because one of the victims was gay. (Id. at 17.)

The appellate court summarized the first point:

. . . [Petitioner] contends that the trial court plainly erred in overruling his motion for judgment of acquittal of assault at the close of the evidence because there was insufficient evidence from which a reasonable juror could have found him guilty of "knowingly" causing serious physical injury to Mr. Duffy. He argues that there was evidence that he was carrying his loaded gun for his protection and he did not intend to shoot Mr. Duffy when he approached Mr. Duffy. He testified that he decided to rob Mr. Duffy when he saw him and was carrying a gun for protection. He said he shot Mr. Duffy because Mr. Duffy swung the motorcycle helmet at him.

(Resp. Ex. E at 4.)  The court first concluded that Petitioner had not established that a manifest injustice or miscarriage of justice would result if the point was not reviewed for plain error and, second, that there was sufficient evidence from which a reasonable juror could conclude that Petitioner intentionally shot Duffy.  (Id. at 4-5.)  The second argument was also reviewed for plain error; no extraordinary circumstances were found that would justify such a review.  (Id. at 5.)  The court also noted that jurors may not impeach their verdict with testimony of any misconduct or partiality that occurred in the jury room, "nor speak of the motives which induced or operated to produce the verdict."  (Id. (internal quotations omitted)).

Petitioner next moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  (Resp. Ex. F at 3-13.)  This motion was amended by appointed counsel.  (Id. at 18-36.)

Trial counsel and the prosecutor testified at an evidentiary hearing.  (Id. at 37-62 .)  Asked why he did not submit the Missouri approved jury instruction on the admission of a confession, MAI-CR3d 310.06,[2] trial counsel explained that the decision not to was a

---

[2]MAI-CR3d 310.06 reads as follows:

> Evidence has been introduced that the defendant made certain statements relating to the offense for which he is on trial.
>
> If you find that a statement was made by the defendant (, and that at that time he understood what he was saying and doing). and that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you may give it such weight as you believe it deserves in arriving at your verdict.
>
> However, if you do not find and believe that the defendant made the statement (, or if you do not find and believe that he understood what he was saying and doing), or if you do not find and believe that the statement was freely

matter of trial strategy. (Id. at 43.) Specifically, the defense was that Petitioner had genuinely admitted to one robbery but not to others and that the police had coerced him into falsely admitting to all robberies. (Id. at 43, 48-49.) The motion court found, in relevant part:

> The first allegation in Movant's amended motion is that his trial counsel was ineffective for failing to request that the jury be instructed pursuant to MAI-CR3d 310.06. The State introduced evidence that Movant confessed to the offenses with which he was charged and made an audiotaped statement. Movant testified that the police officers coerced him into confessing and threatened him physically to get him to confess. Movant alleges that reasonably effective counsel would have requested the trial court submit the instruction, which would have been given and would have directed the jury that they must disregard his confession if they found it was involuntary or if he did not understand what he was saying. Movant contends that he was prejudiced because absent a proper instruction the jury did not know that his statement should be disregarded under the circumstances.

> Trial counsel testified at the post-conviction hearing that his decision not to request Instruction 310.06 was based on trial strategy because the defense was that the defendant was good for some of the charges, but not for the others so to some extent he was confessing to the things he did, and also because one police officer said if [Movant] admitted to everything things would go better for him. On cross-examination trial counsel stated that the defense was that [Movant's] statement was accurate to the extent he was admitting to the crimes he was good for, but inaccurate to the ones he did not commit. Trial counsel testified that the defense as to why [Movant] would have admitted to crimes he did not do was based on the claim that one officer who talked to him told him he would get to go home if he admitted to more crimes.

> . . . In the instant case this Court finds that trial counsel made a reasonable choice not to submit an available instruction under the

and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you must disregard it and give it no weight in your deliberations.

circumstances where Movant admitted that portions of his confession were correct. Further given the strength of the evidence this Court finds that there is no reasonable probability that had such an instruction been offered, even assuming arguendo it would have been given, that the outcome of the trial would have been different.

(Id. at 67-69.) The court also rejected Petitioner's argument that his trial counsel was ineffective for not submitting a mere presence instruction to the jury and for not calling as a witness his girlfriend, who would have testified that she did not consent to the warrantless search of her home and who was not called as a witness at trial or at the evidentiary hearing. (Id. at 69-72.)

Again, Petitioner appealed, arguing that his trial counsel had been ineffective for not submitting the confession and mere presence jury instructions. (Id. at 76; Resp. Ex. G.) Again, the appellate court found no merit to his arguments, noting, in relevant part, that the motion court had found counsel's choice not to submit MAI-CR3d 310.06 to be objectively reasonable and concluding that "[a]n objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." (Resp. Ex. I at 5.)

Petitioner now seeks federal habeas relief on grounds that he was denied his constitutional rights when (1) the trial court overruled his motion for acquittal because the evidence that he knowingly shot Duffy was insufficient; (2) the trial court erred in not sua sponte granting him a new trial on the basis of juror misconduct; (3) his trial counsel was ineffective for not moving to suppress his inculpatory statement; (4) his trial counsel was ineffective for not moving to suppress the evidence seized from his home; (5) his trial

- 8 -

counsel was ineffective for not submitting MAI-CR3d 310.06; and (6) the trial court plainly erred in admitting statements from a confidential informant.[3] Respondent contends that grounds one, two, and five are without merit and three, four, and six are procedurally barred. Petitioner counters that his procedural default is attributable to the ineffective assistance of trial counsel and is, therefore, excused under the holding of <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

In a supplemental pleading filed in April 2007, Petitioner further argues that his trial counsel was ineffective for failing to move to suppress the identification testimony of Kathleen Maddox and Julia Vassolo. Respondent contends that this supplemental claim is untimely and is procedurally barred. Petitioner counters, in relevant part, that the cause of any default is the failure of trial counsel to preserve the issue for appellate review.

## Discussion

<u>Ground One: Insufficient Evidence.</u> Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief "only if the adjudication by the state courts 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law' or 'resulted in a decision that was based on an unreasonable determination of the facts,' which factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." **Kenley v. Bowersox**, 275 F.3d 709, 711 (8th Cir. 2002) (quoting § 2254(d)). <u>Accord</u> **Evans v. Rogerson**, 223 F.3d 869,

---

[3]A detective, Mark West, testified that he had received information from a confidential informant that two men in the area of the robberies had bragged about robbing people. (Resp. Ex. A at 345.)

871 (8th Cir. 2000). A state appellate court's decision "will 'be contrary to' clearly established federal law if the controlling Supreme Court case require a 'different outcome' or a 'particular result.'" **Mark v. Ault**, 498 F.3d 775, 784 (8th Cir. 2007). The decision will be an "unreasonable application" if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." **Id.** at 786 (quoting Collier v. Norris, 485 F.3d 415, 421 (8th Cir. 2007)) (alteration in original). This standard requires that the application be "objectively unreasonable." **Id.** "It is not enough for the federal habeas court to conclude that, in its independent judgment, it would have applied federal law differently from the state court . . . ." **Id.** See also **Williams v. Taylor**, 529 U.S. 362, 410 (2000) (noting that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law"). State courts' decisions are to be given "'the benefit of the doubt.'" **Mark**, 498 F.3d at 786 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)).

And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'" **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999)) (alterations in original).

Petitioner first argues that he is entitled to federal habeas relief because the State failed to carry its burden of establishing that he "knowingly" shot Duffy, as it must for a conviction for first degree assault. Noting that Petitioner had conceded that his argument

had not been raised in his motion for new trial and was not preserved, the state appellate court first concluded that plain error review was not merited because there were no extraordinary circumstances justifying such review and, second, concluded that there was sufficient evidence that Petitioner intentionally shot Duffy.[4]

"The Sixth Amendment requires that criminal convictions 'rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" **Johns v. Bowersox**, 203 F.3d 538, 543 (8th Cir. 2000) (quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)).  Consequently, a federal court's review of a state prisoner's claim that his conviction violated due process is limited to determining if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." **Jackson v. Virginia**, 443 U.S. 307, 324 (1979).  "In applying this standard, [t]he scope of [the Court's] review . . . is extremely limited. . . .  [The Court] must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and . . . must defer to that resolution." **Whitehead v. Dormire**, 340 F.3d 532, 536 (8th Cir. 2003) (all but second and fifth alterations in original) (internal quotations omitted).  Additionally, the federal court is not permitted to make its own determination as to a witness's credibility; that determination is for the state court trier of fact. **Robinson v. LaFleur**, 225 F.3d 950, 954 (8th Cir. 2000).  See also **Thiel v. Schuetzle**, 200 F.3d

---

[4]"An issue that receives plain-error review on direct appeal in state court is not procedurally barred from review under [28 U.S.C. § 2254]." **Rousan v. Roper**, 436 F.3d 951, 962 n.4 (8th Cir. 2006).

1120, 1123 (8th Cir. 1999) ("Even a felon can tell the truth, and notwithstanding his impeachment, it was for the trier of fact to determine whether his testimony was credible or not."); **Gibbs v. Kemna**, 192 F.3d 1173, 1176 (8th Cir. 1999) (rejecting challenge to sufficiency of evidence of state court conviction and noting that habeas petitioner's arguments were directed to reliability or credibility of witnesses and not to sufficiency of the evidence). Where conflicting evidence is presented, it is presumed that the jury resolves any conflicting inferences in the prosecution's favor. **Id.**

Section 565.050 of the Missouri Revised Statutes provides that "[a] person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." "A person acts knowingly with respect to his conduct when he is aware that his conduct is practically certain to cause that result." **State v. McKinney**, 253 S.W.3d 110, 115 (Mo.Ct.App. 2008) (citing Mo.Rev.Stat. § 565.016.3(2)). This necessary, specific intent "may be based upon circumstantial evidence or inferred from surrounding facts." **Id.**; **Mosby v. State**, 236 S.W.3d 670, 677 (Mo.Ct.App. 2007). These surrounding facts may include "conduct that would tend to cause death or serious physical injury." **Id.**

Duffy testified that Petitioner pointed a gun at him. The gun appeared to be cocked. It went off. The jury could reasonably infer that the act of pointing a loaded gun at someone when telling that person to give you his money is conduct that would tend to cause serious physical injury. See e.g. **State v. Smotherman**, 993 S.W.2d 525, 530 (Mo.Ct.App. 1999) (act of defendant of carrying loaded rifle into home and shooting in

direction of wife was conduct from which specific intent required by § 565.050 could be found); **State v. Henke**, 901 S.W.2d 921, 924-25 (Mo.Ct.App. 1995) (evidence that defendant pointed gun at victim and pulled trigger was sufficient to support conviction for first degree assault regardless of defendant's testimony that the shooting was accidental).

Petitioner's first ground is without merit.

Ground Two: Juror Misconduct.  His second ground is also unavailing.  In this ground, Petitioner argues that the trial court committed a miscarriage of justice when failing to sua sponte grant him a new trial after learning of juror misconduct, i.e., pressure brought to bear by one juror on the other jurors to find him guilty based on the sexual orientation of at least one of the victims.  Finding no extraordinary circumstances to justify plain error review, the appellate court noted that the jury's verdict may not be impeached by evidence of any partiality that led to that verdict.

In **Pederson v. Fabian**, 491 F.3d 816 (8th Cir. 2007), the Eighth Circuit was presented with the question whether a juror's answer to the prosecutor's post-verdict questionnaire had denied Pederson a fair trial.  The juror commented in that questionnaire that he understood that a person was "'supposed to be innocent until proven guilty,'" but did not believe that it really worked that way.  **Id.** at 821.  Instead, the juror thought that after the prosecutor presented evidence that someone died, the defense had the obligation to present evidence that it was not Pederson who had committed the murder.  **Id.**  The juror did not believe Pederson to be guilty, but also did not believe the defense had carried its burden of showing he was not.  **Id.**  The state courts had held that, under state law, "the

response could not be considered because it dealt solely with the internal deliberations and impressions of a juror." **Id.** at 829. Thus, the response could not demonstrate that Pederson was denied the presumption of innocence guaranteed him by his Fourteenth Amendment right to a fair trial. **Id.** The Eighth Circuit held that the state courts' holding was "entirely consistent with federal law." **Id.** (citing Fed.R.Evid. 606(b) and Tanner v. United States, 483 U.S. 107, 117-27 (1987)). See also **United States v. Roach**, 164 F.3d 403, 413 (8th Cir. 1998) (Rule 606(b) codifies common law rule against using juror testimony to impeach verdict; therefore, trial court did not err in denying defendant new trial based on one juror's affidavit that there were racial overtones in jury room, that she was pressured into changing her vote to guilty, and that other jurors told her, a diabetic, she could get something to eat when verdict was returned); **United States v. Tran**, 122 F.3d 670 (8th Cir. 1997) (defendant was not entitled to new trial based on juror's affidavit that jury, contrary to its instructions, considered defendant's failure to testify); **United States v. Schroeder**, 433 F.2d 846, 851 (8th Cir. 1970) ("After a jury has given its verdict, has been polled in open court and has been discharged, an individual juror's change of mind or claim that he was mistaken or unwilling in his assent to the verdict comes too late.").

As noted above, this Court may consider the holdings of "inferior federal courts" in factually similar cases when deciding whether the state court's resolution of a constitutional issue is an unreasonable application of federal law. **Copeland**, 232 F.3d at 974. Those holdings and the holding in **Tanner**, 483 U.S. at 116-27, that common law and

Rule 606(b) clearly prohibit the admission of juror testimony to impeach a jury verdict confirm that it was not unreasonable for the state appellate court not to grant relief on Petitioner's claim that a new trial was necessary based on juror's post-verdict affidavit about feeling pressured to convict because a victim was gay.

Ground Five: Trial Counsel's Failure to Offer Instruction. Petitioner also presented to the state courts his post-conviction claim that his attorney was ineffective for not submitting the Missouri approved jury instruction 310.06.

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999)) (second alteration in original). "Only reasonable competence, the sort expected of the ordinary fallible lawyer, is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal quotations omitted). Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial.  **Kellogg**, 176 F.3d at 452.  To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"  **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  **Id.** (quoting Strickland, 466 U.S. at 697).  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694).  "'In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'"  **Lawrence v. Armontrout**, 31 F.3d 662, 666 (8th Cir. 1994) (quoting Strickland, 466 U.S. at 695).  The burden of showing a reasonable probability is the petitioner's.  **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient.  See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998).  Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice.  See **Strickland**, 466 U.S. at 697; **Hoon v. Iowa**, 313 F.3d 1058, 1061 (8th Cir. 2002); **Siers v. Weber**, 259 F.3d 969, 974

(8th Cir. 2001).  Thus, if a petitioner has failed to show that, but for an allegedly deficient performance by his trial counsel, there is a reasonable probability that the outcome of his trial would have been different, his claim of ineffective assistance of counsel fails. **Morales v. Ault**, 476 F.3d 545, 550 (8th Cir. 2007).

The state courts found trial counsel's decision not to submit the jury instruction on a defendant's confession to be a matter of trial strategy.  "[T]he habeas court's commission is not to invent strategic reasons or accept any strategy counsel could have followed, without regard to what actually happened; when a petitioner shows that counsel's actions actually resulted from inattention or neglect, rather than reasoned judgment, the petitioner has rebutted the presumption of strategy . . . ." **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007).

In the instant case, however, trial counsel's decision was not from inattention or neglect.  He was presented with a case charging his client with five separate robberies, identification by three victims of his client as one of the robbers, and the seizure of items from his client or his client's girlfriend that were later identified by the victims as belonging to them.  Additionally, his client testified that he did commit one of the robberies and was with a man identified as the other robber at the two of the other times at issue but did not participate.  His client also gave a statement admitting to the five charged robberies and testified that this statement was given because of threats made by a police officer.  The instruction on confessions, see note 2, above, outlined for the jury the weight to be given a confession when it was freely and voluntarily made as well as

when it was not. Faced with a statement that was confirmed in part by Petitioner and denied in part by Petitioner and with his testimony explaining the inconsistency, trial counsel's strategic decision not to submit MAI-CR3d 310.06 was not deficient. See **Graham v. Dormire**, 212 F.3d 437, 441 (8th Cir. 2000) ("[A] strategy is not unreasonable solely because it failed.").

Petitioner also cannot show prejudice from the omission. The evidence, outlined above, that he committed the robberies was strong without his inculpatory statement.

Grounds Three and Four: Trial Counsel's Failure to File Motion to Suppress. In his third and fourth grounds, Petitioner argues that trial counsel was ineffective for failing to file a motion to suppress his inculpatory statement (ground three) and the items seized from his home (ground four). Neither ground was raised in his amended post-conviction motion or appeal.

"Generally, a defendant must exhaust all available state court remedies before seeking habeas relief." **Echols v. Kemna**, 511 F.3d 783, 785 (8th Cir. 2007). "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." **Id.** (internal quotations omitted). "'Out of respect for finality, comity, and the orderly administration of justice, [however,] a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default,'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Dretke v. Haley, 541 U.S. 386, 388 (2004)), or a miscarriage of justice, **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006). "'This

rule is nearly absolute, barring procedurally-defaulted petitions unless a habeas petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show actual innocence.'" **Cagle**, 474 F.3d at 1099 (quoting Reagan v. Norris, 279 F.3d 651, 652 (8th Cir. 2002)).

Petitioner contends that he can demonstrate cause for his defaults – the ineffective assistance of trial counsel in failing to preserve the suppression issues for review. This contention misstates the issue. The allegations that his trial counsel was ineffective for failing to file two motions to suppress were not raised in Petitioner's post-conviction motion. (See Resp. Ex. F at 18-36.) This omission creates a procedural default. See **Interiano**, 471 F.3d at 856 (finding petitioner's claims of ineffective assistance of trial counsel procedurally defaulted by failure to raise them in Rule 29.15 motion or in post-conviction appeal). The default is attributable to *post-conviction counsel*, not trial counsel. In Coleman, cited by Petitioner, "the Court stated that '[t]here is no constitutional right to an attorney in state post-conviction proceedings.'" **Simpson v. Norris**, 490 F.3d 1029, 1033 (8th Cir. 2007) (quoting Coleman, 501 U.S. at 752 (1991)) (alteration in original). "[W]here there is no constitutional right to counsel there can be no deprivation of effective assistance." **Id.** Accord **Interiano**, 471 F.3d at 857; **Armstrong v. Iowa**, 418 F.3d 924, 927 (8th Cir. 2005). Moreover, even if the default was attributable to trial counsel, that deficiency had to first be presented to the state courts as an independent claim of ineffective assistance. See **Clemons v. Luebbers**, 381 F.3d 744, 752 (8th Cir. 2004). It was not.

Petitioner having failed to establish cause for his default, it is not necessary to reach the issue of prejudice.

His defaulted claims of ineffective assistance of trial court may still be reached on their merits if Petitioner can show that a failure to do so "will result in a fundamental miscarriage of justice." **Coleman**, 501 U.S. at 750. A miscarriage of justice will result if the constitutional violation probably led to "'the conviction of one who is actually innocent.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). "The requirements to establish the requisite probability of innocence are high." **Id.** There must be (1) new evidence and (2) a showing that "'it is more likely than not hat no reasonable juror would have convicted him in light of the new evidence.'" **Id.** (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Petitioner has not made this showing; indeed, he has not even alleged the existence of new evidence.

Ground Six: Trial Court Error. The last, and sixth, ground in his seminal § 2254 petition alleges that Petitioner was denied his Sixth Amendment right of confrontation when the trial court admitted hearsay testimony of a confidential informant. This ground was not presented to the state courts in Petitioner's motion for new trial[5] or in his direct criminal appeal. It is, therefore, procedurally defaulted. See **Clemons v. Delo**, 177 F.3d 680, 685 (8th Cir. 1999) (affirming finding that Confrontation Clause claim was

---

[5]See Respondent's Exhibit B at 149-50.

procedurally barred by petitioner's failure to raise it in direct criminal appeal).  Cf.
**Middleton v. Roper**, 455 F.3d 838, 855 (8th Cir. 2006) (finding that petitioner had *not*
procedurally defaulted on Confrontation Clause argument *because claim had been
specifically raised in direct appeal*).  For the reasons set forth above, Petitioner has failed
to show cause for his default of that a miscarriage of justice will result if the merits of
claim are not reached.

Supplemental Claim.  As noted above, Petitioner amended his petition in April 2007
to raise a claim that his trial counsel was ineffective for failing to suppress the lineup
identification testimony of Kathleen Maddox and Julia Vassolo and the trial court denied
him a fair trial by admitting such testimony.  Respondent argues that the claim is untimely
or, alternatively, procedurally defaulted.

Title 28 U.S.C. § 2244(d) provides, in relevant part, as follows:

(1)  A 1-year period of limitation shall apply to an application for a writ of
habeas corpus by person in custody pursuant to the judgment of a State court.
The limitation period shall run from the latest of —

(A)  the date on which the judgment became final by the conclusion of direct
review or the expiration of the time for seeking such review;

. . . .

(2)  The time during which a properly filed application for State post-
conviction or other collateral review with respect to the pertinent judgment or
claim is pending shall not be counted toward any period of limitation under
this subsection.

Under § 2244(d)(1)(A), "a state prisoner must file his application for a writ of habeas
corpus within one year of the date the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review." **Pierson v. Dormire**, 484 F.3d 486, 493 (8th Cir. 2007).  This time period is tolled during post-conviction proceedings until the Missouri Court of Appeals has issued its mandate in the post-conviction appeal. **Id.** at 495; **Payne v. Dormire**, 441 F.3d 570, 572 (8th Cir. 2006).  The mandate in Petitioner's post-conviction appeal issued on July 14, 2005.  Primm v. State, No. ED84931 (Mo.Ct.App. July 14, 2005) (https://www.courts.mo.gov/casenet/cases/ searchDockets.do) (last visited July 23, 2008).  Clearly, the supplemental claim filed in April 2007 is untimely unless it relates back to the original claims.

"[H]abeas proceedings are civil in nature"; consequently, the Federal Rules of Civil Procedure apply." **United States v. Craycraft**, 167 F.3d 451, 457 n.6 (8th Cir. 1999). Those Rules provide for the relation back of amendments filed after the running of a period of limitations "only if the claim asserted in the original pleading and the claim asserted in the amended pleading arose out of the same conduct, transaction, or occurrence." **Id.** at 457.  It is not enough that the newly asserted claim and the original claims all challenge the assistance of trial counsel. **Id.**  The facts alleged must be sufficiently similar that the original claims give notice of a different sort of theory. **Id.**  The facts in the instant case do not.  A failure to file a motion to suppress inculpatory statements and seized evidence involve allegations separate in time and type from the failure to move to suppress identification testimony.  A trial court's error in admitting such testimony is clearly separate in time and type from a trial court's ruling on the sufficiency of the evidence. Petitioner's seventh ground is untimely.

Alternatively, even if it had been timely filed it would be procedurally barred for the reasons set forth above.  See **Moore-El v. Luebbers**, 446 F.3d 890, 902 (8th Cir. 2006) (finding no error in denial of leave to amend petition to include claim that was procedurally defaulted by failure to develop claim in state courts).

## Conclusion

Petitioner's seven grounds are without merit, procedurally barred, or untimely. Accordingly,

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Mario J. Primm be **DENIED** without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.  See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of July, 2008.